# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA, | |
|      Plaintiff, | |
| v. | |
| FATMATA BARRIE | Civil Action No. 09-822 (CKK) |
| and | |
| LAW OFFICE OF CHRISTOPHER N. ANWAH, PLLC, | |
|      Defendants. | |

## MEMORANDUM OPINION
(October 4, 2010)

Plaintiff District of Columbia (the "District") brings this action against Defendants Fatmata Barrie and the Law Office of Christopher N. Anwah, PLLC, (collectively, "Defendants"), seeking attorneys' fees under the fee-shifting provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1415(i)(3)(B)(i)(II)-(III). The District claims that it is entitled to an award of attorneys' fees incurred in association with administrative proceedings brought under the IDEA by Defendants on behalf of their client because Defendants initiated and continued the litigation below even though their claims were frivolous, unreasonable, and/or without foundation, or were brought for an improper purpose, such as increasing the cost of the litigation. The parties have cross-moved for summary judgment. Upon consideration of the cross-motions, the parties' respective briefing, the administrative record, applicable case law and statutory authority, as well as the record of this case as a whole, the

Court DENIES Plaintiff District of Columbia's [12] Motion for Summary Judgment and GRANTS-IN-PART and DENIES-IN-PART Defendants' [13] Motion for Summary Judgment. Specifically, Defendants' Motion is GRANTED insofar as Defendants contend that the District of Columbia is not entitled to attorneys' fees as asserted in Counts I, II, and III of the Complaint, but is DENIED insofar as Defendants appear to seek to vacate the December 8, 2008 Hearing Officer Decision and an award of attorneys' fees and costs, for the reasons set forth below.

## I. BACKGROUND

As explained above, the present action arises from the District's request for attorneys' fees under the IDEA's fee-shifting provisions. The District argues that it is entitled to an award of attorneys' fees incurred in association with (a) a due process complaint filed by Defendants on October 7, 2008 (hereinafter, "October Due Process Complaint") and (b) the subsequent due process hearings held on the merits of that complaint on November 19 and 26, 2008 (hereinafter, "November Due Process Hearing"). The Court notes that this was the second due process complaint filed by Defendants as part of a long-standing and continuing dispute between the parties regarding the District's compliance with the IDEA. Accordingly, while the instant litigation focuses only on Defendants' conduct in relation to this second complaint and related due process hearing, it is nonetheless necessary to set forth a more fulsome explanation of the parties' ongoing litigation below in order to properly understand the parties' arguments on appeal. In addition, although the substantive merits of Defendants' administrative complaints and the District's compliance with the IDEA are not at issue in this lawsuit, it is also useful to briefly set forth the relevant provisions of the IDEA in order to place in context the District's claims that Defendants' conduct in the administrative proceedings below was frivolous or

unreasonable. The Court therefore begins its discussion by first reviewing the relevant statutory provisions of the IDEA before then turning to discuss the factual and procedural background of the administrative proceedings below as well as the current litigation. Notwithstanding the Court's discussion of these issues, the Court emphasizes that the only question now before the Court is whether the District is entitled to attorneys' fees and costs expended in litigating the October Due Process Complaint and in preparing for and attending the November Due Process Hearing.

A.    *The IDEA Statutory Framework*

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in the IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200 (1982). As a condition of receiving funding under the IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of disabled students. *See* 20 U.S.C. § 1413. A student's eligibility for a FAPE under the IDEA is determined by the results of testing and evaluating the student, and the findings of a "multidisciplinary team" ("MDT") or "individualized education program" ("IEP") team. *Id.* § 1414. Such a team consists of the parents and teachers of the disabled student, as well as other educational specialists, who meet and confer in a collaborative process to determine how best to accommodate the needs of the student and provide a FAPE. *See id.* § 1414(d)(1)(B).

School districts must also develop an IEP, a comprehensive individual education program, for meeting the special educational needs of each disabled student. *See id.* § 1414(d)(2)(A). The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204. The IDEA requires IEPs to include statements of present functional performance, measurable annual goals, how the goals will be measured, and "the special education and related services and supplementary aids and services . . . to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child." 20 U.S.C. § 1414(d)(1)(A)(I). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *Reid v. District of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and alterations omitted).

The IDEA guarantees parents of disabled children the opportunity to participate in the evaluation and placement process. *See* 20 U.S .C. §§ 1414(f), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement" are entitled to an impartial due process hearing, *see id.* §§ 1415(b)(6), (f)(1), at which they have a "right to be accompanied and advised by counsel" and a "right to present evidence and confront, cross-examine, and compel the attendance of witnesses," *id.* § 1415(h). A qualified impartial hearing officer conducts the due process hearing in accordance with the Act. 5 D.C. Mun. Regs. § 3030.1.

Under the IDEA, a party is entitled to attorneys' fees and costs if he or she is a "prevailing party." 20 U.S.C. § 1415(i)(3)(B). A party "aggrieved by" a hearing officer's findings and decision may bring a civil action in either state or federal court. *Id.* § 1415(i)(2); 5

D.C. Mun. Regs. § 3031.5.  The district court has remedial authority under the IDEA to grant

"such relief as the court determines is appropriate" under the IDEA as guided by the goals of the

Act.  20 U.S.C. § 1415(i)(2)(C)(iii).  This includes discretion to award reasonable attorneys' fees

to the party that prevails at the hearing.  *Id.* § 1415(i)(3).

>    *B.*    *Factual and Procedural Background*

Defendant Barrie is an attorney licensed to practice in the District and was employed at

all relevant times by the co-Defendant in this case, the Law Office of Christopher N. Anwah,

PLLC, located in the District of Columbia.  Pl.'s Stmt. ¶¶ 1, 2.[1]  Defendants represented T.P., an

eight-year-old student whom the District has identified as a student with a disability and in need

of special education.  Pl.'s Stmt. ¶ 1; Defs.' Stmt. 1.  At the time of the administrative

proceedings below, T.P. attended Aiton Elementary School ("Aiton"), a public school run by the

District of Columbia Public Schools ("DCPS").  Defs.' Stmt. ¶ 1.

>    1.    The August Due Process Complaint

On August 13, 2008, Defendants filed an initial due process complaint on T.P.'s behalf

(hereinafter, "August Due Process Complaint"), alleging that DCPS: (1) failed to update T.P.'s

triennial evaluations; (2) failed to provide an appropriate placement for the previous two years;

---

[1] The Court strictly adheres to the text of Local Civil Rule 7(h) when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding district courts must invoke the local rule before applying it to the case).  The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." [10] Order at 3-4 (June 30, 2009).  Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party, in which case the Court may cite a party's Response to the Statement of Material Facts ("Resp.").  The Court shall also cite directly to evidence in the record, where appropriate.

(3) failed to develop an appropriate IEP for the past two school years; and (4) failed to provide appropriate educational, related, and special education services for the 2006-2007 and 2007-2008 school years at Aiton. Pl.'s Stmt. ¶ 4; *see also* Pl.'s MSJ, Ex. 1 (Aug. 13, 2008 Due Process Compl.). Defendants requested that the Hearing Officer order DCPS to: (1) fund a placement of the parent's choice, with transportation, at one of several private schools; (2) fund an independent Vineland Assessment to rule out mental retardation ("MR"); (3) convene an MDT/IEP meeting to develop an appropriate IEP for T.P.; and (4) provide T.P. with educational and related services. Pl.'s MSJ, Ex. 1 (Aug. 13, 2008 Due Process Compl.), at 3.

        2.      The September HOD

        A hearing was held on the merits of the August Due Process Complaint, and a Hearing Officer's Decision ("HOD") was subsequently issued on September 18, 2008 (hereinafter, "September HOD"). Defs.' Stmt. ¶ 7; *see also* Admin. Record ("A.R.") at 129-34 (Sept. 18, 2008 HOD). As set forth therein, the September HOD found that "DCPS has failed to timely evaluate the student . . . and develop an appropriate IEP," and that "[t]he delay in appropriately evaluating the student and the continuing failure to devise an appropriate educational program has forced the student to languish in an inappropriate placement." A.R. at 132. The September HOD therefore ordered that DCPS was required to "fund an independent Vineland Assessment" and to "convene an IEP/placement meeting within 5 days of receiving the [Vineland Assessment]." *Id.* The September HOD further specified that the purpose of the IEP/placement meeting was to "review the evaluation, determine if additional evaluations are needed, update the IEP and discuss and determine the need for additional services, and an appropriate placement." *Id.* In addition, DCPS was required to "issue a notice of placement within 5 days of the

placement determination meeting." *Id.* Finally, the September HOD noted that DCPS would "receive a one day extension for every day of delay caused by the Petitioner, the student, or their representatives." *Id.* Neither party appealed the September HOD.

### 3. The Vineland Assessment

Pursuant to the September HOD, T.P.'s parents arranged for an independent Vineland Assessment to be conducted at the District's cost. *See* Defs.' Stmt. ¶ 9. The Vineland Assessment determined that T.P. should be classified as MR in addition to her previously-identified speech and language classifications. *Id.* ¶ 10. The Vineland Assessment was forwarded to DCPS on September 25, 2008, and was received by the District on the same day, along with a cover letter from Defendants requesting that, "[p]er the HOD, . . . DCPS convene an MDT/IEP meeting within the allotted timeframe." *Id.* ¶ 9; Pl.'s Stmt. ¶ 7; A.R. at 114. The IEP/placement meeting, however, did not occur within five days of DCPS' receipt of the assessment — i.e., by September 30, 2008. A.R. at 5.

### 4. The October Due Process Complaint

As of October 7, 2008, having not yet heard from the District as to the scheduling of the IEP/placement meeting, Defendants filed a second Due Process Complaint on T.P.'s behalf (hereinafter, the "October Due Process Complaint"). Pl's Stmt. ¶ 8; *see also* A.R. at 15-20 (Oct. 7, 2008 Due Process Compl.). The October Due Process Complaint raised allegations similar to those in the initial August Due Process Complaint, claiming that DCPS: (1) failed to convene the IEP/placement meeting within five days of receiving the Vineland Assessment, as required by the September HOD; (2) failed to provide T.P., who at the time remained at Aiton, with an appropriate placement, as required by the September HOD; (3) failed to develop an appropriate

IEP for T.P. that implemented the findings of the Vineland Assessment; and (4) failed to provide appropriate educational, related, and special education services for the 2006-2007 and 2007-2008 school years. A.R. at 17. The October Due Process Complaint sought an order requiring DCPS to: (1) fund a placement of the parent's choice, with transportation, at one of several private schools; (2) convene an IEP/placement meeting to develop an appropriate IEP for T.P.; and (3) provide T.P. with educational and related services. *Id.*

### 5. An IEP/Placement Meeting is Held on October 31, 2008

The next day, October 8, 2008, DCPS faxed a "Letter of Invitation/Notice to a Meeting of the IEP Team" to Annie Pressley, an educational advocate employed by Defendants and assigned to work with T.P.'s parents, advising that an IEP meeting was scheduled for October 13, 2008. Pl.'s Stmt. ¶ 12. DCPS sent a second letter to Pressley on October 9, 2008, proposing three additional meeting dates: October 14, 17, or 21, 2008. *Id.* ¶ 14. Pressley subsequently responded to DCPS, advising that the proposed dates did not work and requesting that the meeting be held instead on either October 23 or 31, 2008. *Id.* ¶ 15.[2] DCPS accepted the proposed October 31, 2008 date. *Id.* ¶ 17.

The IEP/placement meeting was held as scheduled on October 31, 2008. *Id.* ¶ 18. A new IEP was developed at the meeting (hereinafter, "October IEP"). *Id.* As required by the September HOD, the IEP team reviewed the Vineland Assessment, determined whether additional evaluations were needed, updated T.P.'s previous IEP, and discussed and determined

---

[2] The parties dispute whether Pressley responded to DCPS on October 8, 2008, as Defendants claim, or on October 13, 2008, as the District claims. *See* Pl.'s Stmt. ¶ 15; Defs.' Stmt. ¶ 13. The Court finds that this dispute is immaterial to the present litigation and therefore need not be resolved.

the need for additional services for T.P.  *Id.* ¶ 20.  As is of particular relevance, the team also

concluded that Aiton could not implement the IEP.  Defs.' Stmt. ¶ 14.  The IEP team, except for

T.P.'s parent and educational advocate, determined that Tyler Elementary School ("Tyler") was

an appropriate placement for T.P.  Pl.'s Stmt. ¶ 20.  By contrast, the parent proposed Accotink

Academy as an appropriate placement for T.P. and provided DCPS with an acceptance letter

from the school.  *Id.* ¶ 15.  Although there is conflicting testimony and evidence in the record as

to whether the parent explicitly rejected Tyler as an appropriate placement at the October 31

meeting, the IEP/placement meeting notes indicate that "Mrs. Parker [i.e., the parent] and

educational advocate reject Tyler."  Pl.'s Stmt. ¶ 24; A.R. at 153.  DCPS did not issue a notice of

placement within five days of the IEP/placement meeting as required by the September HOD.

Defs.' Stmt. ¶ 15.  T.P. therefore remained at Aiton, which all parties agreed was an

inappropriate placement.  Pl.'s Stmt. ¶ 26.[3]

### 6.     The November Due Process Hearing

A due process hearing was convened on November 19, 2008, and continued to November

26, 2008, with respect to T.P.'s October Due Process Complaint (hereinafter, "November Due

Process Hearing").  Pl.'s Stmt. ¶ 26.  Three witnesses were called during the five hours of

---

[3] The District maintains that "[t]he IEP/MDT deferred making a final placement decision
at this meeting to afford the parent an opportunity to visit the proposed placement and to see if it
was suitable to her and the student," but that "[n]either T.P.'s parent nor Ms. Pressley ever
visited Tyler to assess its suitability for T.P. after the IEP meeting."  Pl.'s Stmt.¶ 23.
Accordingly, the District urges that the only reason for the delay in issuing a notice of placement
was the parent's own conduct and failure to respond to DCPS as to the suitability of Tyler.
Defendants for their part do not dispute that T.P.'s parent never visited Tyler or responded to the
District, but do dispute the District's contention that the IEP team agreed to defer the issuance of
the placement notice pending the parent's response.  *See* Defs.' Resp. ¶ 23.  Regardless, for the
reasons set forth below, the Court finds that it need not resolve this dispute as it is not material to
the Court's decision herein.  *See infra* at pp. 26-27.

hearing — namely, Anne Warnke, an Assistant Educational Director at Accotink Academy, and Pressley, T.P.'s educational advocate, who both testified on behalf of T.P., and Angela Allen, the Special Education Coordinator for Aiton, who testified on behalf of DCPS. *Id.* ¶ 28. During the course of the November Due Process Hearing, the testimony and evidence presented focused principally on the first and second claims alleged in the October Due Process Complaint, specifically: (1) DCPS' failure to convene an IEP/placement meeting within five days of receipt of the Vineland Assessment, as required by the September HOD; and (2) the parties' dispute as to the proposed placement. *See generally* 11/19/08 Due Process Hearing Transcript ("11/19/08 Tr."); 11/26/08 Due Process Hearing Transcript ("11/26/08 Tr."). The third claim in the October Due Process Complaint, alleging that DCPS had failed to develop an appropriate IEP, was only marginally discussed during the November Due Process Hearing; Defendants in fact presented no evidence that the October IEP developed at the October 31, 2008 meeting was inappropriate, and the only evidence in the record was Allen's testimony that the IEP was appropriate. Pl.'s Stmt. ¶¶ 30, 38. Finally, with respect to the fourth allegation in the October Due Process Complaint — i.e., that DCPS failed to provide appropriate educational, related, and special education services for the 2006-2007 and 2007-2008 school years — the hearing officer made clear that she would not consider evidence regarding events occurring prior to the issuance of the September HOD, as "the issue in this case beings with the [September] HOD." 11/19/08 Tr. at 50. Accordingly, no evidence or testimony was presented on this final issue.

### 7.    The December HOD

The hearing officer issued her HOD on December 6, 2008 (hereinafter, "December HOD"). A.R. at 2-10 (Dec. 6, 2008 HOD). As set forth therein, the hearing officer found in

favor of DCPS as to the first claim in the October Due Process Complaint, concluding that

Petitioners' advocates and/or attorney were solely to blame for any delay in scheduling the IEP

meeting following the receipt of the Vineland Assessment by DCPS. *Id.* at 8. Specifically, the

hearing officer found that Defendants had advised DCPS to provide seven to ten days notice of

any proposed IEP meeting in order to enable counsel to ensure the parents could attend the

proposed meeting. *Id.*[4] The hearing officer further found that T.P.'s educational advocate,

Pressley, had rejected the earlier-proposed dates for the IEP/placement meeting and had herself

proposed the October 31, 2010 meeting date. *Id.* The hearing officer concluded that "DCPS

should not be held responsible for delays caused by Petitioners, their educational advocate, or

their attorney" because the September HOD explicitly stated that "DCPS was to be provided a

one day extension for every day of delay caused by the Petitioner, the Student, or their

representatives." *Id.* Accordingly, the hearing officer held that "Petitioner's claim that DCPS

---

[4] The parties dispute whether this finding by the hearing officer accurately reflects the testimony provided at the November Due Process Hearing. The District asserts that the finding is well-supported by the record evidence, and that, regardless, the "Hearing Officer's decision is *res judicata*, and is not subject to collateral attack at this juncture." Pl.'s Opp'n at 5; Pl.'s Stmt. ¶ 40. Defendants contend that the finding is in error as the only testimony provided during the November Due Process Hearing was that IDEA counsel generally asked DCPS to provide seven to ten days notice prior to scheduling a meeting — not that Defendants in this case specifically asked DCPS to provide such advance notice, *see* 11/26/08 Tr. at 60-61; to the contrary, no testimony was provided that Defendants in this case specifically requested that they be provided seven to ten days notice, and the evidence in fact demonstrates that Defendants requested DCPS schedule the IEP meeting in compliance with the September HOD (i.e., within five days of receipt of the Vineland Assessment), *see* A.R. at 114. *See* Defs.' Opp'n at 10-11; Defs.' Resp. ¶ 40. While the District is correct that the December HOD is a final decision not subject to collateral attack and is therefore binding on T.P. and DCPS as to the merits of T.P.'s allegations in her October Due Process Complaint, whether the hearing officer's factual findings are equally binding on Defendants in this action to recover attorneys' fees is less clear and, unfortunately, neither party has sufficiently briefed this issue. Regardless, the Court finds that this dispute is not material to the resolution of the District's Complaint, for the reasons set forth below. *See infra* at pp. 19-21.

denied the Student FAPE by failing to schedule the meeting within five days of receiving the Vineland is meritless at best." *Id.*

The hearing officer also found in favor of DCPS as to the second allegation in the October Due Process Complaint that DCPS had failed to provide an appropriate placement for T.P. *Id.* at 9. The hearing officer concluded that:

> The IEP team took sufficient steps to involve the Parents in the placement decision. . . . Petitioners offered no evidence to counter the IEP team's assessment that Tyler was an appropriate placement. Neither the Parents nor Ms. Pressley ever visited Tyler, despite that Ms. Allen had arranged a site visit with the Tyler [special education coordinator]. The IEP team did not issue a [prior notice of placement] because they were awaiting input from the Parents regarding her impressions of Tyler. . . . While Petitioners may have preferred Accotink, IDEA guarantees special education students only a "basic floor of opportunity." Moreover, Petitioners presented no evidence that Tyler would not provide the Student the requisite basic floor of opportunity. Thus, Petitioners failed to establish by a preponderance of the evidence that DCPS failed to provide an appropriate placement for the Student.

*Id.* (internal citations omitted).

Turning to the third allegation in the October Due Process Complaint, namely that DCPS had failed to develop an appropriate IEP, the hearing officer also found for DCPS. *Id.* The hearing officer determined that "Petitioners failed to present any evidence about the appropriateness (or lack thereof) of the IEP," and that the "only testimony regarding the IEP was . . . that the IEP was appropriate for the Student." *Id.* at 9.

With respect to the fourth allegation in the October Due Process Complaint regarding the provision of educational services to T.P. for the 2006-2008 school years, the hearing officer found that "this claim is *res judicata*," as the "exact same claim was brought in Petitioner's August 13, 2008 complaint" and "was decided by another hearing officer's HOD on September 19, 2008." *Id.* at 3 n.2. The hearing officer therefore "decline[d] to revisit this claim." *Id.*

12

Finally, the hearing officer noted that a court may award a local educational agency attorneys' fees against a parent's attorney if the attorney files a complaint or civil action that is frivolous, unreasonable, or without foundation, or for litigation maintained after it became groundless. *Id.* at 10. Based on her finding that "Petitioners' Advocate and/or Counsel were solely responsible for the delays in scheduling the IEP meeting," the "Hearing Officer conclude[d] that Petitioners' counsel continued to litigate after it was apparent that this issue had become groundless and after it was apparent that Petitioners were entitled to no relief on this issue." *Id.* As the parties all recognize on appeal, however, this finding by the hearing officer is not legally binding on this Court.

The October Due Process Complaint was dismissed with prejudice. *Id.* The December HOD was not appealed through the administrative process within the allotted 90-day period. Pl.'s MSJ at 14; Defs.' Reply at 4-5.

### 8. The Instant Litigation

On May 5, 2009, the District filed the Complaint in the instant action. *See* Compl., Docket No. [1]. As set forth therein, the Complaint contains three counts brought under the IDEA's fee-shifting provision. Count I asserts that the District is entitled to attorneys' fees "[b]ecause Defendants filed the due process complaint alleging untimely scheduling of a meeting that was not scheduled in a timely manner solely due to Defendants' own interference, and their allegations that other requirements of the September 18, 2008 HOD had not been fulfilled were also the result of their own interference with the scheduling of the MDT/IEP meetings," such that "Defendants' October 7, 2008 due process complaint was frivolous, unreasonable and/or without foundation." *Id.* ¶ 48. Count II alleges that the District is also entitled to attorneys' fees based

upon the fact that "Defendants continued to litigate after DCPS scheduled an MDT/IEP meeting, held an MDT/IEP meeting and otherwise fulfilled all requirements of the September 18, 2008 HOD." *Id.* ¶ 51. Count III asserts that, based on the above allegations, it is also apparent that Defendants filed the "October 7, 2008 due process complaint was filed for an improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *Id.* ¶ 56. The District seeks an award of $3,753.75 in attorneys' fees and costs for 13.65 hours of legal work incurred in representing DCPS in the administrative proceedings below. *Id.* at 10.

This matter now comes before the Court on the filing of the parties' Cross-Motions for Summary Judgment. *See* Pl.'s MSJ, Docket No. [12]; Defs.' MSJ, Docket No. [13]. Each party has also filed an opposition to the opposing party's motion as well as a reply in support of their own motion. *See* Pl.'s Opp'n, Docket No. [15]; Defs.' Opp'n, Docket No. [16]; Pl.'s Reply, Docket No. [17]; Defs.' Reply, Docket No. [18]. In addition, the District has filed the Administrative Record for this case, *see* Docket No. [11], which has been deemed authentic and admissible, *see* 07/08/09 Min. Order. Briefing with respect to the parties' Cross-Motions for Summary Judgment is now complete, and the issues are ripe for the Court's review and resolution.

## II. LEGAL STANDARD

The parties have filed cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is proper when "the pleadings, the discovery [if any] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under the summary judgment standard, the moving party bears the "initial responsibility

of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). All underlying facts and inferences are analyzed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III. DISCUSSION

The principal question now before the Court is whether the District is entitled to attorneys' fees and costs expended in litigating the October Due Process Complaint and in preparing for and attending the November Due Process Hearing. For a local educational agency to prevail in an action for attorneys' fees, it must establish that it was the prevailing party, and either: (1) the attorney(s) filed a complaint that was "frivolous, unreasonable, or without foundation," 20 U.S.C. § 1415(i)(3)(B)(i)(II); or (2) the attorney(s) "continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation," 20 U.S.C. § 1415(i)(3)(B)(i)(II); or (3) the attorney(s) brought the complaint for an "improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation," 20 U.S.C. § 1415(i)(3)(B)(i)(III). The District seeks attorneys' fees on all three grounds.

#### A. The District is a Prevailing Party

The Court must first determine whether the District is a "prevailing party." *See* 20 U.S.C. §§ 1415(i)(3)(B)(i)(II)-(III). The D.C. Circuit has articulated a three-part test to establish prevailing party status: "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial

pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus*, 590 F.3d 898, 901 (D.C. Cir. 2010) (citing *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-93 (D.C. Cir. 2003)). Although the test was initially developed "in connection with requests for fees by plaintiffs;" the D.C. Circuit has advised that it also applies to fee requests by defendants as well, although in such circumstances, only the latter two requirements must be satisfied. *Id.* ("Although we have developed this test in connection with requests for fees by plaintiffs, we have applied the latter two requirements to requests by defendants as well."); *see also District of Columbia v. Nahass*, 699 F. Supp. 2d 175, 182 (D.D.C. 2010) ("where a defendant is seeking to establish 'prevailing party' status, that party need not establish a court-ordered change in the legal relationship of the parties").

The Court finds that the District qualifies as a prevailing party. Because the District was the defendant below, the Court need only determine whether the latter two prongs of the three-part test outlined above are met. Here, the December HOD dismissed with prejudice the October Due Process Complaint filed by Defendants on T.P.'s behalf against the District. This decision in the District's favor easily satisfies both the second and third prongs of the test set forth in *Straus* because the judgment was in favor of DCPS and DCPS was granted judicial relief. *District of Columbia v. West*, 669 F. Supp. 2d 273, 278 (D.D.C. 2010) (Kennedy, J.) ("Courts in this and other Circuits have determined that a Hearing Officer's dismissal on the merits of a due process complaint that has not been appealed warrants a finding that a state educational agency or local educational agency is a prevailing party.") (citing *District of Columbia v. Ijeabuonwu*, 631 F. Supp. 2d 101, 105 (D.D.C. 2009)); *see also Nahass*, 699 F. Supp. 2d at 182 (same).

Defendants' arguments to the contrary are without merit. In particular, Defendants argue that the District is not a prevailing party because "the Hearing Officer was wrong in her assessment of the facts" in this case, such that the December HOD was decided in error. Defs.' MSJ at 12-15; Defs.' Opp'n at 10-15. Defendants, however, did not appeal the December HOD, and that decision dismissing the action in the District's favor is final. While Defendants may continue to believe the December 2008 HOD was in error, it nonetheless remains that the decision is final and awarded judgment in the District's favor with accompanying judicial relief. The District therefore qualifies as a prevailing party under the IDEA's fee-shifting provisions.

> B.    *The October Due Process Complaint Filed by Defendants Was Not Frivolous, Unreasonable, or Without Foundation*

A prevailing local educational agency is entitled to attorneys' fees if, *inter alia*, "the attorney . . . files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation." 20 U.S.C. § 1415(i)(3)(B)(i)(II). The District contends in Count I of its Complaint that it is entitled to attorneys' fees "[b]ecause Defendants filed the due process complaint alleging untimely scheduling of a meeting that was not scheduled in a timely manner solely due to Defendants' own interference, and their allegations that other requirements of the September 18, 2008 HOD had not been fulfilled were also the result of their own interference with the scheduling of the MDT/IEP meetings," such that "Defendants' October 7, 2008 due process complaint was frivolous, unreasonable and/or without foundation." Compl. ¶ 48.

As explained above, the September HOD required DCPS to "convene an IEP/placement meeting within 5 days of receiving the [Vineland Assessment]." A.R. at 132. The District received the Vineland Assessment on September 25, 2008. Defs.' Stmt. ¶ 9. Accordingly,

DCPS was required to convene the IEP/placement meeting by no later than September 30, 2008. As of October 7, 2008, the District had not yet contacted Defendants to schedule the IEP/MDT meeting, and Defendants therefore filed the October Due Process Complaint at issue. Pl's Stmt. ¶ 8; *see also* A.R. at 15-20. Defendants alleged on T.P.'s behalf that DCPS had failed to convene the MDT/IEP meeting within five days of receiving the Vineland Assessment, as required by the September HOD and consequently had also failed to provide T.P. with an appropriate placement or develop an appropriate IEP, as required by the September HOD. A.R. at 17. It is therefore clear that the principal impetus in filing this second complaint was DCPS' failure to timely convene the IEP/placement meeting as required by the September HOD. As such, the Court does not find that the October Due Process Complaint was frivolous or without foundation. Nor was the filing of the October Due Process Complaint wholly unreasonable. While it may have been sensible for Defendants to confer with the District before filing their complaint, "the Court is unaware of any case authority — and the District cites none — standing for the proposition that a party has either a duty to confer with the opposing party before filing a due process complaint, or a duty to abstain for a given amount of time before acting on a perceived denial of an education service or benefit." *Nahass*, 699 F. Supp. 2d at 184.

The District's arguments to the contrary are without merit. Specifically, the District argues that the October Due Process Complaint "should never have been filed" as the "Defendants knew at the time . . . that the *only* reason the IEP meeting was delayed was because they had previously requested that DCPS afford them seven to ten business days advance notice before scheduling a meeting — thereby automatically precluding DCPS from convening a meeting within five days." Pl.'s MSJ at 20. As noted above, the parties dispute whether

Defendants in fact requested that they be provided seven to ten days advance notice. *See supra* at p. 19 n. 4. On review of the administrative record in this case, the Court finds that the evidence does not support the conclusion that Defendants made such a request in this particular case. The only testimony on this point indicated that, as a general matter, IDEA counsel typically request that DCPS provide seven to ten days advance notice; there is no evidence in the record, however, that these specific Defendants made such a request in this particular case and, indeed, the only evidence in the record indicates Defendants requested the meeting be convened within the time limits set forth in the September HOD — i.e., five days within receipt of the Vineland Assessment. *See* A.R. at 114 (requesting that, "[p]er the HOD, . . . DCPS convene an MDT/IEP meeting within the allotted timeframe").

The Court, however, need not resolve this dispute as even assuming Defendants made such a request, this fact by itself does not render the filing of the October Due Process Complaint frivolous, unreasonable, or without foundation. As the Court understands the District's argument, the District asserts that this alleged request by Defendants for advance notice extended the time period within which the District was required to convene the IEP/placement meeting under the September HOD. That is, because the District was required to give seven to ten days advance notice, the IEP/placement meeting could not have occurred within the five days ordered in the September HOD and, indeed, could not have occurred any earlier than seven to ten days after DCPS received the Vineland Assessment. *See* Pl.'s MSJ at 20. However, even assuming that Defendants made such a request for advance notice and that this informal agreement trumped the September HOD requirement that a meeting be convened within five days — two assumptions which by themselves are problematic — this argument does not mean that the

District's conduct was timely. Ten days from the date of the District's receipt of the Vineland Assessment on September 25, 2008, was October 5, 2008. It is undisputed that the District did not convene the IEP/placement meeting, let alone contact Defendants, by October 5, 2008, or indeed by October 7, 2008, the date on which the complaint was filed.[5]

In a final effort to demonstrate that the October Due Process Complaint was nonetheless frivolous when filed, the District emphasizes in its Motion for Summary Judgment that the October Due Process Complaint also contained the allegation that DCPS failed to provide appropriate education services to T.P. for the 2006-2007 and 2007-20008. Pl.'s MSJ at 21-23. The District emphasizes that this same allegation had already been litigated and decided in T.P.'s favor by the September HOD. *Id.* The District therefore urges that inclusion of this claim rendered the October Due Process Complaint frivolous, unreasonable, or without foundation

---

[5] The District counters that the Court should consider only *business* days, not calendar days, in calculating the ten day time frame at issue because it is "DCPS' practice to count business days, not weekends and holidays." Pl.'s MSJ at 20 n.5. The Court notes that this argument is advanced solely in a footnote in the District's Motion for Summary Judgment, and the District has not offered any supporting legal authority; indeed, the District admits that the hearing officer herself determined that the applicable time period should be calculated using calendar days. *Id.* Given the District's failure to fully explain and support this argument, which it addressed solely in a footnote, the Court need not consider it here. *See Hutchins v. District of Columbia*, 188 F.3d 531, 539 n. 3 (D.C. Cir. 1999) ("We need not consider cursory arguments made only in a footnote . . . ."). Regardless, even if the Court were to consider this argument, which it does not, it would not alter the Court's decision herein. The District appears to argue that its conduct was timely because: (a) DCPS first contacted Defendants on October 9, 2008, which was only nine business days after receipt of the Vineland Assessment; (b) pursuant to Defendants' alleged request for seven to ten business days advance notice, the earliest the District could have convened the meeting was October 10, 2008; therefore (c) DCPS timely contacted Defendants before the expiration of the ten business day time period for convening the IEP/placement meeting. This reasoning suffers from a key flaw, however, as it conflates the District's obligation to *convene* the IEP/placement meeting with its obligation to *give advance notice* of such meeting. Indeed, by waiting nine business days to contact Defendants, the District in fact ensured that the meeting could not convene within the ten business day period that the District contends is at issue.

when filed. *Id.* As an initial matter, this particular assertion is not included in the District's Complaint. Rather, in alleging that the October Due Process Complaint was frivolous when filed, the District focused solely on the timing issues discussed above and did not allege that the inclusion of this additional claim relating to the 2006-2008 school years was a basis for finding that Defendants acted unreasonably. *See* Compl. ¶¶ 46-49. It is well established that a party may not amend its complaint or broaden its claims through summary judgment briefing. *See Sloan v. Urban Title Servs., Inc.,* 652 F. Supp. 2d 51, 63 (D.D.C. 2009) ("Plaintiff cannot amend her complaint by . . . filing a motion for summary judgment; she must amend her complaint in accordance with Fed. R. Civ.P. 15(a)."); *see also DSMC Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (rejecting the plaintiff's attempt to broaden claims and thereby amend its complaint in opposition to defendant's motion for summary judgment). Regardless, even if the Court were to consider this argument, the Court is not persuaded that the inclusion of this single additional allegation does not render the October Due Process Complaint wholly frivolous or unreasonable. This is particularly so given that, at the time the October Due Process Complaint was filed, the District had not yet taken the steps necessary to remedy its proven failure to provide appropriate education services to T.P. for the 2006-2007 and 2007-2008 school years.

The Court therefore finds that the filing of the October Due Process Complaint was not frivolous, unreasonable, or without foundation. It may be, as the hearing officer concluded in the December HOD, that the subsequent delay in scheduling the IEP/placement meeting after DCPS made initial contact with Defendants was solely due to Defendants' own scheduling preferences, given that the Defendants rejected the earlier available dates and proposed the later October 31, 2010 date. However, at the time Defendants filed the October Due Process Complaint, the

District had failed to timely schedule an IEP/placement meeting as required by the September HOD, and, as a consequence of this failure,T.P. remained in an inappropriate placement (Aiton) without an appropriate IEP.  The Court therefore DENIES the District's [12] Motion for Summary Judgment and GRANTS Defendants' [13] Motion for Summary Judgment as to Count I of the District's Complaint.

     C.     *Defendants' Continued Litigation of the October Due Process Complaint Was Not Frivolous, Unreasonable, or Without Foundation*

Alternatively, a prevailing local educational agency is entitled to attorneys' fees if, *inter alia*, "the attorney . . . continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation."  20 U.S.C. § 1415(i)(3)(B)(i)(II).  The District contends in Count II of its Complaint that it is entitled to attorneys' fees because "Defendants continued to litigate after DCPS scheduled an MDT/IEP meeting, held an MDT/IEP meeting and otherwise fulfilled all requirements of the September 18, 2008 HOD."  Compl. ¶ 51.  The Court does not agree.  At the time of the November Due Process Hearing, DCPS had not yet issued a notice of placement, as required by the September HOD.  It was also readily apparent that an outstanding dispute remained between the parties as to the appropriate placement for T.P.  The parties proceeded to litigate their dispute as to placement at the November Due Process Hearing, and the hearing officer ruled in the District's favor in the December HOD, finding that DCPS' proposed placement at Tyler was appropriate.  Accordingly, as there remained a substantive dispute between the parties at the time of the November Due Process Hearing, the Court finds that the Defendants' continued litigation of the October Due Process Complaint was not frivolous, unreasonable, or without foundation.  *Cf. Ijeabuonwu*, 631 F. Supp. 2d at 105 (finding continued

litigation was frivolous where "defendants continued with the administrative hearing, even though *no substantive disputes remained* between them and DCPS and no further relief could be provided") (emphasis in original).

The Court is not persuaded by the District's arguments to the contrary. First, the Distirct contends that Defendants' conduct was nonetheless frivolous, unreasonable, and unfounded because "Defendants forced DCPS to participate in two administrative hearing sessions to litigate the question of whether or not DCPS had convened an IEP meeting to review the Vineland assessment for T.P. or had developed an IEP for her based upon that assessment, knowing that an IEP meeting had in fact been convened and an IEP had indeed been developed." Pl.'s MSJ at 25. This assertion, however, is based on an inaccurate characterization of the November Due Process Hearing. As review of the transcript for the November Due Process Hearing demonstrates, the focus of that hearing was *not* on the question of whether an IEP/placement meeting had been convened and an IEP developed. Rather, as explained above, the administrative hearing focused almost exclusively on those substantive disputes that remained between the parties at that time — namely, the reason for the delay in convening the IEP/placement meeting, whether that delay harmed T.P., and the appropriateness of DCPS' proposed placement. While Defendants ultimately did not prevail on either issue based on the hearing officer's conclusion that Defendants had failed to present sufficient evidence on these issues, the Court does not find that this justifies attorneys' fees in this case.

Second, the District argues that Defendants' continued litigation of the claim that DCPS failed to develop an appropriate IEP was frivolous and without foundation as Defendants failed to present any evidence at the November Due Process Hearing to challenge the validity of the

IEP.  Pl.'s MSJ at 25-26.  The District is correct that Defendants did not argue at the November

Due Process Hearing that the October IEP was inappropriate nor did Defendants present any

evidence on this point.  While the more expedient course of action may have been for Defendants

to withdraw this specific claim at the hearing, the Court does not find that their failure to do so

by itself supports a finding that the District is entitled to attorneys' fees.  As discussed above, a

substantive dispute remained between the parties as to other claims for relief in the October Due

Process Complaint, and the decision to continue to litigate the complaint was therefore neither

frivolous or without foundation.  *See Nahass*, 699 F. Supp. 2d at 184 (fact that one of the claims

had been rendered moot by the time of the administrative hearing did not mean that attorneys

acted frivolously or unreasonably when they continued to litigate the due process complaint

because the other requests for relief in the complaint remained in dispute).

Third, the District argues that although a substantive dispute remained between the

parties as to the appropriate placement for T.P., this dispute did not justify continued litigation of

the October Due Process Complaint because no final placement decision had yet been made and

any substantive challenges to the placement decision would have been required to be the subject

of a new due process complaint.  Pl.'s MSJ at 26.  According to the District, "[w]hile Defendants

sought to focus the November hearing sessions on the proposed placement, any question with

that placement decision was beyond the scope of the September 18 HOD and the October 7

complaint."  *Id.*  Significantly, however, the District made no such argument to the hearing

officer below.  Both parties' evidence and testimony at the November Due Process Hearing

focused largely on the appropriateness of DCPS' proposed placement, without objection by

either party.  The hearing officer herself described the matter as a "placement case" and

recognized that T.P. and her parents sought relief in the form of an "order [as to] placement." *See* 11/19/08 Tr. at 71 (hearing officer described the matter as a "placement case" and recognized that T.P. and her parents sought relief in the form of an "order [as to] placement"). Consistent with that understanding, the December HOD made a final ruling on the issue, finding that DCPS' proposed placement at Tyler was appropriate. A.R. at 9-10 (December HOD). That decision was not appealed by either party on the basis that it was beyond the hearing officer's authority. Consequently, the issue was finally resolved, and T.P. is now attending Tyler. Defs.' Resp. ¶ 5.

Moreover, by failing to make a final placement decision, DCPS was in violation of the September HOD, which required DCPS to "issue a notice of placement within 5 days of the placement determination meeting." A.R. at 132 (September HOD). DCPS therefore had not "fulfilled all requirements of the September 18, 2008 HOD," as it now claims. Compl. ¶ 51. The District attempts to argue that the failure to issue the final placement decision was due solely to Defendants' own failure to cooperate with DCPS. In particular, the District contends that no final placement notice was issued because DCPS was waiting for T.P.'s parent to visit Tyler and to advise DCPS whether that placement was appropriate. Pl.'s MSJ at 26-27. The Court notes, however, that the evidence in the record indicates that DCPS itself understood at the time of the October 31, 2008 IEP/placement meeting that T.P.'s parents had rejected the proposed placement at Tyler. *See* A.R. at 153**.** If that was the case, there was no need for DCPS to wait for a further response from the parent. Regardless, the September HOD found that T.P.'s current placement in Aiton was inappropriate and placed the burden on DCPS to issue a notice of appropriate placement within five days of the meeting. The Court is not persuaded by the District's argument that it was excused from this obligation because of the parent's conduct in this case,

such that the District could refrain from issuing a final notice of placement and allow T.P. to remain in Aiton indefinitely, a placement that all parties agree was inappropriate for the student, solely because the parent did not visit Tyler. As DCPS had not fully complied with the September HOD and a dispute remained as to an appropriate placement for T.P., Defendants' continued litigation of the October Due Process Complaint was not frivolous, unreasonable, or without foundation. Accordingly, the Court DENIES the District's [12] Motion for Summary Judgment and GRANTS Defendants' [13] Motion for Summary Judgment as to Count II of the District's Complaint.

> D. *The District Has Not Shown that Defendants Initiated and Continued to Litigate the October Due Process Complaint for Improper Purposes*

Finally, a prevailing local educational agency is entitled to attorneys' fees if, *inter alia*, "the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i)(III). In Count III of the Complaint, the District alleges that "October 7, 2008 due process complaint was filed for an improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *Id.* ¶ 56. The District's sole argument in support of this claim, however, is that because Defendants acted frivolously or unreasonably in filing the October Due Process Complaint and in continuing to litigate the allegations therein, it is evident that Defendants acted in bad faith in this case. *See* Pl.'s MSJ at 30. As the Court has already determined that Defendants did not act frivolously or unreasonably in initiating and litigating the October Due Process Complaint, Count III of the District's Complaint must fail as well. Accordingly, the Court DENIES the District's [12] Motion for

Summary Judgment and GRANTS Defendants' [13] Motion for Summary Judgment as to Count III of the District's Complaint.

> E.  *Defendants' Motion for Summary Judgment is Denied Insofar as Defendants Appear to Seek to Vacate the December HOD and Request an Award of Attorneys' Fees and Costs*

Finally, the Court turns to Defendants' Cross-Motion for Summary Judgment. As set forth therein, Defendants argue that the District brought the instant lawsuit "as a form of intimidation," and Defendants are therefore entitled to an award of "attorneys' fees and costs for this action and the administrative proceedings." Defs.' MSJ at 19. Defendants, however, have not provided the Court with any legal authority supporting their request for an award of attorneys' fees or costs. To the extent Defendants seek an award of attorneys' fees incurred in association with the October Due Process Complaint and the November Due Process Hearing, Defendants were not a prevailing party, as required for an award of attorney's fees under 20 U.S.C. § 1415(i)(3)(B)(i)(I). Alternatively, to the extent Defendants seek an award of attorneys' fees in connection with the instant litigation, Defendants have not provided a sufficient legal basis to overcome the general rule against awarding attorneys' fees to successful litigants. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *see also Nahass*, 699 F. Supp. 2d at 185 (D.D.C. 2010) (refusing defendants' request for attorneys' fees). Moreover, while Defendants contend the District brought this suit for improper reasons, "the District had a reasonable belief that it could prevail in this litigation, in light of the Hearing Officer's erroneous but understandable conclusion" that Defendants had continued to litigate after it was apparent they were entitled to no relief. *Nahass*, 699 F. Supp. 2d at 185.

Defendants also appear to seek an order "vacat[ing] the Hearing Officer's Decision entered [on] December 8, 2008." Defs.' MSJ at 19. Again, Defendants provide no statutory basis or any case law to support this request. While Defendants were entitled to bring an action in either state or federal court challenging the December HOD pursuant to 20 U.S.C. § 1415(i)(2), they did not do so and the Court is without legal authority to vacate that decision in the present action. Accordingly, Defendants' [13] Motion for Summary Judgment is DENIED insofar as Defendants appear to seek to vacate the December 8, 2008 Hearing Officer Decision and an award of attorneys' fees and costs.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff District of Columbia's [12] Motion for Summary Judgment is DENIED and Defendants' [13] Motion for Summary Judgment is GRANTED-IN-PART and DENIED-IN-PART. Specifically, Defendants' Motion is GRANTED insofar as Defendants contend that the District of Columbia is not entitled to attorneys' fees as asserted in Counts I, II, and III of the Complaint, but is DENIED insofar as Defendants appear to seek to vacate the December 8, 2008 Hearing Officer Decision and an award of attorneys' fees and costs. The instant case is dismissed in its entirety. An appropriate order has previously been issued.

Date:   October 4, 2010

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
United States District Judge